IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROOSEVELT KAIRY, ET AL.,

    Plaintiffs,

v.

SUPERSHUTTLE INTERNATIONAL, INC., ET AL.,

    Defendants.

No. C 08-02993 JSW

**ORDER GRANTING MOTION TO DISMISS CALIFORNIA CAUSES OF ACTION AND DENYING MOTION TO DISMISS FOR FAILURE TO JOIN NECESSARY PARTIES**

Now before the Court are two motions filed by Defendants SuperShuttle International, Inc. and SuperShuttle Franchise Corporation (collectively "SuperShuttle"). The first is a motion to dismiss all claims based on California law, specifically the second through eleventh claims, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). The second is a motion to dismiss and/or for other relief for failure to join necessary parties pursuant to Rule 19 of the Federal Rules of Civil Procedure. Having considered the parties' pleadings and the relevant legal authority, and having had the benefit of oral argument, the Court hereby GRANTS SuperShuttle's motion to dismiss the California claims pursuant and DENIES SuperShuttle's motion to dismiss for failure to join necessary parties.

**BACKGROUND**

Plaintiffs are individuals who drove passenger vehicles for SuperShuttle in California during the period commencing April 9, 2006 to the present who allege that they have not been

paid minimum wages and overtime compensation pursuant to the Fair Labor Standards Act ("FLSA") and under California law. Plaintiffs seek relief from SuperShuttle's "unlawful misclassification of its airport shuttle drivers (hereinafter 'Drivers') as 'franchisees' and independent contractors.'" (Second Amended Complaint ("SAC") at ¶ 4.) Plaintiffs challenge SuperShuttle's policy of "willfully and unlawfully misclassifying its Drivers as 'independent contractors' and/or 'franchisees' and thereby refusing to indemnify them for employment-related expenses and losses, taking wrongful deductions from their wages, coercing them to purchase necessary services and items, and failing to provide off-duty meal periods as required by California law, and further failing to pay minimum wage and overtime compensation, and failing to document actual hours worked as required by both the FLSA and California law." (*Id.*)

The Court shall address additional facts as necessary to its analysis in the remainder of this Order.

**ANALYSIS**

**A. Motion to Dismiss California Claims for Lack of Subject Matter Jurisdiction.**

**1. Applicable Legal Standards.**

When a defendant moves to dismiss a complaint or claim for lack of subject matter jurisdiction, the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim. *Thornhill Publ'n Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). Federal courts can only adjudicate cases which the Constitution or Congress authorize them to adjudicate: those cases which involve diversity of citizenship, or those cases which involve a federal question, or those cases which involve the United States as a party. *See e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where an attack on jurisdiction is a "facial" attack on the allegations of the complaint, the factual allegations of the complaint are taken as true and the non-moving party is entitled to have those facts construed in the light most favorable to him or her. *Fed'n of African Am.*

*Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). If the jurisdictional attack is "factual," a defendant may rely on affidavits or other evidence properly before the Court, and the non-moving party is not entitled to any presumptions of truthfulness with respect to the allegations in the complaint. Rather, he or she must come forward with evidence establishing jurisdiction. *Thornhill*, 594 F.2d at 733.

### 2. The PUC's Exclusive Jurisdiction Bars California Claims.

In California, airport shuttle operations, such as those run by SuperShuttle, are subject to regulation by the Public Utilities Commission ("PUC"). The PUC "has exclusive jurisdiction over the regulation and control of utilities, and once it has assumed jurisdiction, it cannot be hampered, interfered with, or second-guessed by a concurrent superior court action addressing the same issue." *Schell v. Southern California Edison Co.*, 204 Cal. App. 3d 1039, 1047 (1988). The California Public Utilities Code provides that "[n]o court of this state ... shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, as provided by law and the rules of court." Cal. Pub. Util. Code § 1759 ("Section 1759"). As a federal court, this Court must apply California law as it believes the California Supreme Court would apply it. *See Gravquick A/V v. Trimble Navigation Int'l*, 323 F.3d 1219, 1222 (9th Cir. 2003).

To determine whether an action interferes with the PUC in the performance of its duties warranting preclusion by Section 1759, the Court must find each of the following to be true: (1) the PUC must possess the authority to adopt a regulatory policy regarding the subject matter of the action; (2) the PUC must have exercised the authority to adopt such policies; and (3) the court action would hinder or interfere with the PUC's exercise of such regulatory authority. *See San Diego Gas & Elec. Co. v. Superior Court (Covalt)*, 13 Cal. 4th 893, 923, 926, 935 (1996); *see also Hartwell Corp. v. Superior Court*, 27 Cal. 4th 256, 266 (2002).

///

///

///

3

### a. The PUC Has Authority to Formulate Policy Regarding Classification of Drivers.

The PUC is granted broad powers to regulate the manner in which regulated service providers offer their services to the public. The California Supreme Court has held that

> The commission is a state agency of constitutional origin with far-reaching duties, functions and powers. The Constitution confers broad authority on the commission to regulate utilities, including the power to fix rates, establish rules, hold various types of hearings, award reparation, and establish its own procedures. .... Pursuant to this constitutional provision the Legislature creates, inter alia, the Public Utilities Act ... which vests the commission with broad authority to 'supervise and regulate every public entity in the State' and grants the commission numerous specific powers for the purpose. Again, however, the commission's powers are not limited to those expressly conferred on it: the Legislature further authorized the commission to '*do all things*, whether specifically designated in [the Public Utilities Act] *or in addition thereto*, which are necessary and convenient' in the exercise of its jurisdiction over public utilities.

*Covalt*, 13 Cal. 4th at 914-15 (citations omitted; emphasis in original). The Legislature also made clear in Section 1759 of the Public Utilities Act that "no other court has jurisdiction either to review or suspend the commission's decisions or to enjoin or otherwise 'interfere' with the commission's performance of its duties." *Id.* at 916.

The PUC's General Order 158-A ("General Order"), sets forth rules and regulations governing passenger stage corporations ("PSC"). SuperShuttle City Licensees hold PSC certificates issued by the PUC and serve as operating carriers. The General Order provides that shuttle drivers may be employees or independent owner-drivers who hold authority of the operating carrier, but that regardless, they shall remain under the "complete supervision, direction and control of the operating carrier." (*See* Declaration of Steven C. Rice ("Rice Decl."), Ex. D at 6, PUC General Order 158-A, § 5.03.) Therefore, under its General Order, the PUC expressly permits passenger stage operations to be conducted through use of non-employee subcarriers.

Part of the PUC's wide ranging powers is to regulate the manner in which regulated service providers offer their services to the public. The PUC's mission statement provides that the PUC "serves the public interest by protecting consumers and ensuring the provision of safe, reliable utility services and infrastructure at reasonable rates." *See* PUC Mission Statement; *see also* Cal. Pub. Util. Code § 768 (the PUC may promulgate rules governing the equipment,

4

practices and facilities of public utilities "so as to promote and safeguard the health and safety of its employees, passengers, consumers and the public"). The determination elucidated in the PUC's General Order regulating the specific types of business models that can be profitable and competitive at the lowest cost is consistent with the PUC's mission statement to ensure reasonable rates and the availability of services to the public. The Court finds that, in compliance with the first factor of the *Covalt* test, the PUC has the authority to formulate policy regarding the classification of passenger stage corporation drivers. *Covalt*, 13 Cal. 4th at 923.

### b. The PUC Has Exercised Its Authority to Adopt Policies Regulating the Classification of Drivers.

The second prong of the *Covalt* test requires that the PUC has adopted policies regarding the subject matter of the litigation. *See id.* at 926. This litigation concerns the Plaintiffs' claim that, as PUC-licensed charter party carriers operating as sub-carriers to passenger stage corporations, they were misclassified as independent contractors. Plaintiffs claim that, based on the level of control exercised by SuperShuttle, they should be treated as employees and granted the benefits under California law associated with that status.

However, the PUC in *In re Prime Time Shuttle Int'l, Inc.*, 67 CPUC 2d 437, 1996 WL 465519, *1 (Cal. P.U.C., Aug. 2, 1996) ("*Prime Time*"), concluded that "consistent with statutory provisions, GO 158-A, and prior Commission precedent, a [passenger stage corporation] can provide all or a substantial part of its passenger stage service through the use of nonemployee drivers, so long as these subcarriers hold charter-party permits, as required under GO 158-A." The PUC explicitly held that a passenger stage corporation, "consistent with state statutes and Commission regulations, can legally serve its customers through the use of nonemployee drivers operating their own vans." *Id.* at *7. Although the commission indicated that the nature of its jurisdiction is service and safety and that it is not responsible for regulating drivers' incomes or a passenger stage corporation's preference for employee or nonemployee drivers, the clear holding in *Prime Time* was that, consistent with General Order 158-A, the PUC permits the carriers to use nonemployee drivers and that they remain under the "complete supervision, direction and control of the operating carrier." *Id.* at *16; *see also* Rice Decl., Ex. D at 6, PUC General Order 158-A, § 5.03. It is clear from the regulations and the commission's

5

decision in *Prime Time*, that the classification of drivers, and specifically whether nonemployee status is permissible in the context in which the operator has complete control, falls within the scope of the PUC's exercise of authority. Plaintiffs seek to reclassify the drivers, not merely to regulate the wages and hours for the regulated utilities. The Court finds that, in compliance with the second prong of the *Covalt* test, the PUC has adopted policies regarding the subject matter of the litigation. *See Covalt*, 13 Cal. 4th at 926.[1]

### c. Court Action Would Interfere With the PUC's Exercise of Its Regulatory Authority.

The third prong of the *Covalt* test is met if the court rulings sought by the litigation would "reverse, correct or annul" an order or decision of the PUC or "would have the effect of undermining a general supervisory or regulatory policy of the [PUC], i.e., when it would 'hinder' or 'frustrate' or 'interfere with' or 'obstruct' that policy." *Wise v. Pacific Gas & Elec. Co.*, 77 Cal. App. 4th 287, 294 (1999) (citing *Covalt*, 13 Cal. 4th at 918). "The PUC has exclusive jurisdiction over the regulation and control of utilities and once it has assumed jurisdiction, it cannot be hampered, interfered with, or second-guessed by a concurrent superior court action addressing the same issue." *Covalt*, 13 Cal. 3d at 918. "In short, an award of damages is barred by section 1759 if it would be contrary to a policy adopted by the PUC and would interfere with its regulation of public utilities." *Waters v. Pacific Tel. Co.*, 12 Cal. 3d 1, 11 (1974).

Plaintiffs argue that the level of control exercised by SuperShuttle over the drivers requires that those drivers be classified as employees. Plaintiffs contend that their treatment as independent contractors is a misclassification warranting injunctive and monetary relief. Although the purported correct classification of the drivers would have an effect on Plaintiffs' wage and hour claims, the basis for such a determination would rest on the reclassification of

---

[1] Further, the Court finds that Plaintiffs' reliance on *Leslie v. Superior Court*, 73 Cal. App. 4th 1042, 1047-48 (1999), is misplaced. In that matter, the PUC had not promulgated any regulations governing the issue in the litigation, therefore not satisfying the second part of the three-part *Covalt* test. *Id.* at 1052 ("The PUC has not promulgated rules or regulations governing the grading of dirt access roads."). Here, by contrast, the PUC has issued regulations on the classification of drivers and has issued a lengthy opinion confirming the application of such regulations.

6

the drivers. However, as the Court has determined, the PUC's regulations and decisions have determined that independent nonemployee status is permitted, notwithstanding the requirement that the passenger stage corporation exercise "complete supervision, direction and control" over the operations of the charter party licensee. (*See* Rice Decl., Ex. D at 6, PUC General Order 158-A, § 5.03.) The Court finds that any determination regarding the proper classification of the plaintiff drivers would have the effect of adjudicating the classification of Plaintiffs as either employees or nonemployees under the California claims. This Court lacks jurisdiction to make such a determination. *See* Cal. Pub. Util. Code § 1759. Accordingly, SuperShuttle's motion to dismiss the California claims is GRANTED with prejudice for lack of subject matter jurisdiction.[2]

**B.     Motion to Dismiss for Failure to Join Necessary Parties.**

By separate motion, SuperShuttle contends that this Court should dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 19 ("Rule 19") for failure to join necessary parties indispensable to the resolution of this action. SuperShuttle contends that the City Licensees that entered into the contracts with Plaintiffs by virtue of which Plaintiffs became franchises or independent contractors are necessary and indispensable parties. SuperShuttle also argues that the subdrivers who were hired or contracted with the franchisees and independent contractors also must be joined in this action. This motion relates only to the remaining, federal, cause of action under FLSA.

Dismissal pursuant to Rule 19 involves a two-part analysis. Fed. R. Civ. P. 19(a). First, the district court must determine whether the absent party is a "necessary" party. *Id.* A party is "necessary" in two circumstances: (1) when complete relief is not possible without the absent

---

[2] The Court is not persuaded by Plaintiffs' arguments regarding the non-exclusivity of jurisdiction. The test articulated by the California Supreme Court in *Covalt* establishes that, once the determination is made that the PUC has authority to formulate policy, has exercised such authority, and that the court action would hinder or interfere with the PUC's policies, the PUC's jurisdiction is exclusive.
    Further, the Court is not persuaded by Plaintiffs' arguments regarding their Unfair Competition Law claim, which can be brought after the administrative proceeding. The Court GRANTS Plaintiffs' administrative request to submit supplemental authorities, but finds it unpersuasive.

7

party's presence, or (2) when the absent party claims a legally protected interest in the action such that (i) disposition of the action may "impair or impede" the person's ability to protect that interest or (ii) "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." *Id.*; *Yellowstone County v. Pease,* 96 F.3d 1169, 1172 (9th Cir. 1996). If the absent party is "necessary," the court must determine whether joinder is feasible. *United States v. Bowen,* 172 F.3d 682, 687 (9th Cir. 1999). If the absent party is necessary and joinder is not feasible, the court must determine whether the party is "indispensable," *i.e.*, whether in "equity and good conscience" the action can continue without the absent party. *Bowen,* 172 F.3d at 688. To make the indispensability determination, the court balances four factors: (1) prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum. *Quileute Indian Tribe v. Babbitt,* 18 F.3d 1456, 1460 (9th Cir. 1994). The moving party has the burden of proving that dismissal is warranted. *Shermoen v. United States,* 982 F.2d 1312, 1317 (9th Cir. 1992). The inquiry is a fact-specific one, designed to avoid the harsh results of rigid application. *Dawavendewa v. Salt River project Agricultural Improvement and Power District*, 276 F.3d 1150, 1154-55 (9th Cir. 2002) (citing *Confederated Tribes v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991)). In deciding the motion, the Court may consider matters outside the pleadings. *Mattera v. Clear Channel Communications, Inc.*, 239 F.R.D. 70, 74 (S.D.N.Y. 2006) (citing *Holland v. Fahnestock & Co.,* 210 F.R.D. 487, 495 (S.D.N.Y. 2002)).

Having reviewed the record submitted in this matter, the Court finds that the additional parties – the City Licensees and the franchisee or independent contractor drivers – are not necessary to this action. The record demonstrates that the City Licensees share an identity of interest with the current SuperShuttle defendants, that their interests are sufficiently represented and any finding of liability could be satisfied in their absence. Further, the Court finds that defendants have already joined the franchisee drivers in the case and any resolution of their separate interests may be managed at the class certification stage of the proceedings. The Court

finds that both sets of parties have interests strongly aligned with current parties and that Plaintiffs may, if successful, receive complete relief on the federal claim as currently pled. *See, e.g., Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999) ("As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit. In determining whether an absent party is adequately represented by an existing party, we consider whether the interests of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments; whether the party is capable of and willing to make such arguments; and whether the absent party would 'offer any necessary element to the proceedings' that the present parties would neglect."). Because the Court finds the parties not necessary, it does not need to address whether they are indispensable. *See Bowen*, 172 F.3d at 687. Accordingly, the Court DENIES SuperShuttle's motion to dismiss for failure to join necessary parties.

## CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS SuperShuttle's motion to dismiss the California causes of action with prejudice and DENIES SuperShuttle's motion to dismiss for failure to join necessary parties pursuant to Rule 19.

The hearing on the pending motion to certify the class is HEREBY SET for March 5, 2010 at 9:00 a.m. The opposition to the motion shall be filed by no later than January 25, 2010 and the reply shall be filed by no later than February 5, 2010.

**IT IS SO ORDERED.**

Dated: December 22, 2009

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

9