IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROOSEVELT KAIRY, ET AL.,

    Plaintiffs,

v.

SUPERSHUTTLE INTERNATIONAL, INC., ET AL.,

    Defendants.

No. C 08-02993 JSW

**ORDER GRANTING MOTIONS TO COMPEL INDIVIDUAL ARBITRATION FOR CERTAIN PLAINTIFFS**

Now before the Court are the motions to stay proceedings pending individual arbitrations filed by Defendants Supershuttle International, Inc. and Supershuttle Franchise Corporation (collectively "Defendants"). The Court has considered the parties' papers, relevant legal authority, and the record in this case. For the reasons set forth in the remainder of this Order, Defendants' motion are GRANTED and the matter is STAYED as to those certain plaintiffs pending completion of individual arbitration.

**BACKGROUND**

Plaintiffs are individuals who drove passenger vehicles for SuperShuttle in California during the period commencing April 9, 2006 to the present who allege that they have not been paid minimum wages and overtime compensation pursuant to the Fair Labor Standards Act ("FLSA") and under California law.

This action was filed by four former owners of "SuperShuttle" franchises, and one former independent contractors operator. Plaintiffs seek relief from SuperShuttle's "unlawful

misclassification of its airport shuttle drivers as 'franchisees' and independent contractors.'" (Second Amended Complaint ("SAC") at ¶ 4.) Each franchisee signed at least one Unit Franchise Agreement ("UFA") when he or she purchased the initial franchise. Additional UFAs were signed later in connection with other franchise purchases. Although the arbitration clauses vary a bit in the UFAs, nearly all require that "any controversy arising out of this Agreement shall be submitted to the American Arbitration Association ... for arbitration in accordance with its commercial rules and procedures that are in effect at the time arbitration is filed." (Declaration of Steven C. Rice at ¶ 4, Ex. 371.) Moreover, most of the UFAs also provide that "[a]ny arbitration, suit, action or other legal proceeding shall be conducted and resolved on an individual basis only and not on a class-wide, multiple plaintiff or similar basis." (*Id.* at ¶ 15.) Others of the UFAs are silent as to class-wide arbitrations. (*Id.*)

On December 22, 2009, this Court dismissed the complaint for lack of jurisdiction. On interlocutory review, the Ninth Circuit Court of Appeals reversed and remanded to this Court for further action. In response to an intervening decision by the Supreme Court in *AT&T v. Concepcion*, 563 U.S. \_\_, 131 S. Ct. 1740 (2011) ("*Concepcion*").

Defendants now move to compel arbitration and to stay the action as to those consent signers who operated as franchisees, or in connection with franchisees, pursuant to Section 3 of the Federal Arbitration Act.

The Court shall address additional facts as necessary to its analysis in the remainder of this Order.

## ANALYSIS

**A.    Legal Standards Applicable to Motions to Compel Arbitration.**

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Once the Court has determined that an arbitration agreement involves a transaction involving interstate commerce, thereby falling under the FAA, the Court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the parties' dispute falls within that agreement. 9 U.S.C. § 4; *Chiron Corp. v.*

*Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The parties in this case do not dispute that the claims at issue would fall within the scope of the arbitration agreements; the only issue is whether the arbitration agreements are valid and enforceable.

The FAA represents the "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been made and has not been honored," and the dispute falls within the scope of that agreement, the Court must order arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). The "central purpose of the [FAA is] to ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995). The "preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, a concern which requires that [courts] rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. 614, 925-26 (1985) (internal quotations omitted).

Where, as here, a litigant sues to enforce statutory claims, that fact alone will not necessarily preclude arbitration. The Supreme Court has "recognized that federal statutory claims can be appropriately resolved through arbitration, and [it has] enforced agreements to arbitrate that involve such claims." *Green Tree Financial Corp. - Alabama v. Randolph*, 531 U.S. 79, 89 (2000). If statutory claims are involved and an arbitration agreement exists, the agreement should be enforced "unless Congress itself has evinced an intention to preclude waiver of judicial remedies for the statutory rights at issue," and the litigant can effectively vindicate "[his or her] statutory *cause of action* in the arbitral forum." *Gilmer v. Interstate Johnson/Lane Corp.*, 500 U.S. 20, 26-28 (1991) (emphasis added).

Finally, notwithstanding the liberal policy favoring arbitration, by entering into an arbitration agreement, two parties are entering into a contract. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989) (noting that arbitration "is a matter of consent, not coercion"). Thus, as with any contract an arbitration

3

agreement is "subject to all defenses to enforcement that apply to contracts generally." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). Although the Court can initially determine whether a valid agreement exists, disputes over the meaning of specific terms are matters for the arbitrator to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Prima Paint*, 388 U.S. at 403-04 (holding that "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate").

Defendants move to compel arbitration of any and all FLSA claims brought by the individual consent signers opting into the FLSA claims asserted by Plaintiffs.

Plaintiffs oppose the motion to stay in favor of arbitration on various bases. First, Plaintiffs contend that Defendants waived arbitration by pursuing litigation. Second, Plaintiffs argue that the arbitration agreements are unconscionable and therefore invalid. Lastly, Plaintiffs contend that those Plaintiffs who did not sign the original arbitration agreements should not be compelled to arbitrate their statutory claims. The Court shall address each argument in turn.

**B.     The Agreement to Arbitrate Was Not Waived.**

Waiver presents a question for the court to decide. *Cox v. Ocean View Hotel, Corp.*, 533 F.3d 1114, 1120-21 & nn.3-6 (9th Cir. 2008). A party waives its right to compel arbitration where: (1) it has knowledge of an existing right to compel arbitration; (2) it engages in conduct inconsistent with that existing right; and (3) there is prejudice to the party opposing arbitration resulting from such inconsistent acts. *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1989).

**1.     Ruling in *Concepcion*.**

In the wake of new Supreme Court precedent, arbitration agreements may be "invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1742-43 (internal quotation marked omitted). Accordingly, the parties' arbitration provisions excluding class-wide arbitrations in the contracts at issue are no longer considered unconscionable.

4

Before the decision in *Concepcion*, governing California law instructed that courts refuse to enforce any contract found to have been unconscionable at the time it was made or to limit the application of any unconscionable clause. *See* Cal. Civ. Code § 1670.5(a).[1] In *Discover Bank*, the California Supreme Court applied this framework to class-action waivers in arbitration agreements and held that a class-action waiver in an arbitration agreement constituted a deliberate scheme to cheat large numbers of consumers from relatively small amounts of money and to protect businesses from responsibility for their own fraud. *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162 (2005), *aff'd Discover Bank, Laster v. AT&T Mobility LLC*, 584 F.3d 849, 855 (2009). However, the United States Supreme Court in *Concepcion* specifically found that the FAA preempts California's *Discover Bank* rule and held that courts must compel arbitration even in the absence of the opportunity for plaintiffs to bring their claims as a class action.

### 2. Argument re Waiver.

Plaintiffs argue that Defendants have waived their right to enforce the arbitration agreements in this matter because they failed to raise the issue previously in the course of litigation. A "party seeking to prove waiver of a right to arbitrated must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990). "The party arguing waiver of arbitration bears a heavy burden of proof." *Id.*

#### a. Knowledge of an existing right.

In this case, most of the arbitration agreements specifically provide that the arbitrations must proceed on an individual, and not class-wide, basis. Those few arbitration agreements which are silent as to class-wide arbitration, in the absence of any evidence manifesting the parties' intent to the contrary, also require individual arbitrations. The Supreme Court, analyzing an arbitration agreement silent as to class-actions, determined that "a party may not

---

[1] In supplemental briefing requested by the Court, both parties agreed that under a choice of law analysis, California law governs the determination of unconscionability of the class-wide arbitration waivers.

5

be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. __, 130 S. Ct. 1758, 1775 (2010); *accord Dominium Austin Partners, LLC v. Emerson*, 248 F.3d 720, 728-29 (8th Cir. 2001) ("[B]ecause the ... agreements make no provision for arbitration as a class, the district court did not err by compelling appellants to submit their claims to arbitration as individuals."); *see also Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1108-09 (C.D. Cal. 2002) ("a district court cannot order arbitration to proceed on a class-wide basis unless the arbitration clause contains a provision for class-wide resolution of claims."). Therefore, prior to the ruling in *Concepcion*, in the absence of class-wide arbitration provision, class arbitration would not have been available for any of the Plaintiffs. It therefore would indeed have been futile for Defendants in this matter to have moved to compel arbitration prior to the decision in *Concepcion*. *See, e.g., Estrella v. Freedom Financial*, 2011 WL 2633643, at *5 (N.D. Cal. July 5, 2011) (holding that "prior to the Supreme Court's decision in *Concepcion*, it would have been futile for the defendants to file a motion to compel arbitration: prior to *Concepcion*, California and Ninth Circuit law held that similar arbitration agreements with class action waivers were unconscionable and unenforceable.") (citations omitted).

Accordingly, the Court finds that Plaintiffs have failed to meet their burden to demonstrate that Defendants had an existing– and therefore waivable – right to compel arbitration. *See Olivares v. Hispanic Broadcasting Corp.*, 2001 WL 477171, at *1 (C.D. Cal. Apr. 26, 2001) (holding that "Defendants' delayed filing of its motion to compel until now does not constitute waiver because it was the first opportunity for Defendant to file such a motion."); *see also Conover v. Dean Witter Reynolds, Inc.*, 837 F.2d 867, 868 (9th Cir. 1988) (holding that two-year delay in filing a motion to compel arbitration did not constitute a waiver because "[a]n earlier motion to compel would have been futile.") Because Defendants moved promptly to enforce its arbitration agreements as soon as it became clear that the agreements could be enforced as written, its earlier failure to seek to enforce a partially-unenforceable agreement does not reflect an intent to forego the right to seek arbitration. *See, e.g, Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1131 (C.D. Cal. 2011).

6

### b. Prejudice.

Further, in order to prevail on their argument of waiver, Plaintiffs have the burden of demonstrating that they have been prejudiced by inconsistent efforts to enforce the arbitration provision. *See Britton*, 916 F.2d at 1412; *see also ATSA of Cal. v. Cont'l Ins.*, 702 F.2d 172, 175 (9th Cir. 1983) ("inconsistent behavior alone is not sufficient; the party opposing the motion to compel arbitration must have suffered prejudice.")

Plaintiffs make the conclusory statement that they would suffer severe prejudice by having had to litigate in court and now being subject to arbitration. However, "courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses." *St. Agnes Medical Center v. PacifiCare of California*, 31 Cal. 4th 1187, 1203 (2003). Rather, prejudice is found where "the petitioning party's conduct has substantially undermined th[e] important public policy [in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution] or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration." *Quevedo*, 798 F. Supp. 2d at 1132 (citing *St. Agnes*, 31 Cal. 4th at 1204). Thus, for example, prejudice may be found where the petitioning party has used the judicial process to garner information that could not have been gained in arbitration or where a party has unduly delayed and waited until the eve of trial to seek arbitration or where lengthy delays associated with litigation have resulted in the destruction or loss of evidence. *See id.*

Plaintiffs do not assert or demonstrate prejudice of this type. Rather, Plaintiffs assert that the arbitration agreements contain a statute of limitations clause which may result in a finding by the arbitrator that the Plaintiffs' demands are untimely. In addition, Plaintiffs argue that they would have made different strategic choices in arbitration than in litigation and have relied upon the class and collective action claims to shape the course of their discovery and decisions regarding litigation strategy. However, all class and collective action investment of resources would pertain to the remaining Plaintiffs not subject to Defendants' motion to stay in favor of arbitration. (*See* Reply at 4.) In addition, the possibility that an arbitrator would enforce the statute of limitations on Plaintiffs' statutory claims is conjecture and should be

1 addressed to the arbitrator as a threshold issue pertaining to both applicability and
2 conscionability of the statute of limitations provision. Lastly, although this case has been
3 litigated for some time, much of the time the matter was stayed pending remand of this matter
4 by the Ninth Circuit. Substantive discovery can only commence again after the stay was lifted
5 and the trial is not yet set. The Court finds that Plaintiffs have failed to meet their burden of
6 demonstrating that they would suffer prejudice. Because Plaintiffs have failed to establish
7 either that Defendants had knowledge of an existing right to compel arbitration or that they
8 would suffer prejudice from inconsistent acts, the Court finds there was no waiver of the right to
9 arbitration by Defendants. *See Britton,* 916 F.2d at 1412.

### C. Statutory Claims Fall Within Arbitration Clause.

Plaintiffs argue that under Ninth Circuit law, the arbitration clause excludes statutory claims like Plaintiffs' wage and hour claims under the FLSA. Where, as here, a litigant sues to enforce statutory claims, that fact alone will not necessarily preclude arbitration. The Supreme Court has "recognized that federal statutory claims can be appropriately resolved through arbitration, and [it has] enforced agreements to arbitrate that involve such claims." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000). If statutory claims are involved and an arbitration agreement exists, the agreement should be enforced if the litigant can effectively vindicate his or her statutory claim for relief in arbitration, "unless Congress itself has evinced an intention to preclude waiver of judicial remedies for the statutory rights at issue." *Gilmer v. Interstate Johnson/Lane Corp.*, 500 U.S. 20, 26-28 (1991) (emphasis added); *see also Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 99-102 (2000) (noting that claims under California's Fair Housing and Employment Act may be arbitrated, so long as a party may vindicate his or her statutory rights and setting forth procedural protections required); *Romano ex Rel. Romano*, 861 So. 2d 59, 62 (2003) ("Although parties may agree to arbitrate statutory claims, ... arbitration must provide the prospective litigant with an effective way to vindicate his or her statutory cause of action in the arbitral forum."); *see also Solvay Pharms. v. Duramed Pharms., Inc.*, 442 F.3d 471, 482 n.10 (6th Cir. 2006) ("[w]hen faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court

1 should follow the presumption of arbitration and resolve doubts in favor of arbitration ....
2 Indeed, in such a case, only an express provision excluding a specific dispute, or the most
3 forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute
4 from consideration by the arbitrators.").

5       The Court agrees with the reasoning and holdings of the previous courts to examine the
6 specific issues regarding arbitrating the classification of SuperShuttle drivers. In *Reid v.*
7 *SuperShuttle Int'l, Inc.*, the court held that the plaintiffs' claims "arise under their agreements
8 with defendants. 2010 WL 1049613, at *6 (E.D.N.Y. March 22, 2010). The UFAs clearly
9 govern all aspects of the plaintiffs' relationship with SuperShuttle, including their claims that
10 they were employees rather than independent contractors." *Id*. Accordingly, the *Reid* court
11 found that, in resolving any doubt as to the scope of arbitration clause in favor of arbitration, the
12 plaintiffs' statutory classification claims were subject to arbitration. *Id.* Similarly, in *Gadson v.*
13 *SuperShuttle Int'l*, the court found that the "crux of the dispute is whether the Plaintiffs are
14 employees or independent contractors ... [and] such claims indisputably arise out of provisions
15 of the UFAs. .... Thus, Plaintiffs' allegations of any misclassification arise directly out of the
16 UFAs." 2011 WL 1231311, at *4-5 (D. Md. March 30, 2011). Accordingly, the
17 *Gadson* plaintiffs' statutory claims were subject to arbitration. *Id.; see also Green v.*
18 *SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (holding that all misclassification
19 claims were subject to arbitration under the UFAs).

20       The Court finds the reasoning of other courts persuasive and finds that Plaintiffs in this
21 action have not met their high burden of establishing that they could not effectively vindicate
22 their statutory rights in arbitration.

23 **D.**    **Unconscionability.**

24       Next, Plaintiffs contend that the arbitration agreements are not enforceable because they
25 are both substantively and procedurally unconscionable. Invalidating an arbitration agreement
26 for unconscionability under California law requires a two-part showing: the party opposing
27 arbitration has the burden of proving that the arbitration provision is both procedurally and
28 substantively unconscionable. *See Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 795

9

1  (2012). Both components must be present, but not in the same degree; by the use of a sliding
2  scale, a greater showing of procedural or substantive unconscionability will require less of a
3  showing of the other to invalidate the claim. *Id.* Procedural unconscionability focuses on
4  'oppression' or 'surprise' due to unequal bargaining power; substantive unconscionability
5  focuses on 'overly harsh' or 'one-sided' results. *See Armendariz,* 24 Cal. 4th at 114. Both
6  parties agree that California law applies to the determination of conscionability. However,
7  application of California law cannot be inconsistent with or "stand as an obstacle to the
8  accomplishment of the FAA's objectives." *Concepcion*, 131 S. Ct. at 1148.[2]

### 1. Procedural Unconscionability.

"Procedural unconscionability addresses the manner in which agreement to the disputed term was sought or obtained." *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1099 (2002). The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it. *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003) (citing *Armendariz,* 24 Cal. 4th at 113).

Plaintiffs contend that the UFAs are procedurally oppressive because Defendants were in a superior bargaining position and presented a non-negotiable form agreement to the weaker parties. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003). Plaintiffs further argue that the arbitration agreements are the result of surprise because the terms are hidden in a prolix of printed matter. *See Morris v. Redwood Empire Bancorp.*, 128 Cal. App. 4th 1305, 1321 (2005). Finally, Plaintiffs contend that Defendants' admitted failure to distribute the arbitration rules incorporated into the UFAs heightens the level of procedural unconscionability. *See Dunham v. Environmental Chemical Corp.*, 2006 WL 2374703, at *11 (N.D. Cal. Aug. 16, 2006).

---

[2] Although arguably the UFAs' incorporation by reference of the AAA rules indicates that the parties agreed to allow the arbitrator to determine the threshold question of arbitrability, because Defendants failed to present the actual AAA Rules to the franchisees at the time of disclosure, the Court undertakes the threshold analysis. *See, e.g., Madrigal v. New Cingular Wireless Services, Inc.*, 2009 WL 2513478, at *5-8 (E.D. Cal. Aug. 17, 2009); *see also Rent-A-Center West v. Jackson*, 130 S. Ct. 2772, 2777 (2010).

In response, Defendants argue that the UFAs were presented to prospective franchisees, each of whom were given a full disclosure package and permitted by statute a minimum of fourteen days to review the materials before signing. Defendants contend that during this period, prospective franchisees could personally review, have a lawyer review or have translated any or all terms of the agreement. Defendants argue that, unlike standard consumer or employment contracts of adhesion, the franchise agreements are subject to a "considerable amount of regulation that ... [require franchisors] to make detailed disclosures to prospective franchisees, and must provide a fourteen-day waiting period between provision of the disclosure document and the sale of the franchise." *Juarez v. Jani-King*, 273 F.R.D. 571, 582 (N.D. Cal. 2011). Moreover, the arbitration clauses are not hidden but rather are clearly labeled and designated in the table of contents. *See Kilgore v. KeyBank Nat'l Ass'n*, 673 F.3d 947, 963-64 (9th Cir. 2012).

Given the context of the franchise agreements and the attendant waiting period, the Court is not persuaded that there was a significant, or more than minimal, amount of procedural unconscionability in the signing of the UFAs. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1284 (9th Cir. 2006) (noting that evidence that defendant had "overwhelming bargaining power, drafted the contract, and presented it to [plaintiff] on a take-it-or-leave-it basis" amounted to only minimal evidence of procedural unconscionability).

### 2. Substantive Unconscionability.

Plaintiffs also allege that the UFAs would deny them of their ability to vindicate their rights based on several substantive provisions in the agreements which they claim are unconscionable. The concept of substantive unconscionability relates to the actual terms of the arbitration agreement and whether those terms are "overly harsh" or "generate one-sided results." *Id.* at 1281 (internal citations and quotation marks omitted). "The paramount consideration in assessing conscionability is mutuality." *Id.* (internal citations and quotation marks omitted).

11

### a. Fee splitting.

Plaintiffs argue that the arbitration provision is substantively unconscionable because it provides that the parties shall split the arbitrator's fees and costs. Plaintiffs argue that it is unconscionable to require them to split the costs of the arbitrator because such costs would impose a "substantial economic barrier to justice." (Opp. Br. at 16.)

Significantly, these terms in the arbitration provision apply equally to both Plaintiffs and Defendants and, arising in the context of franchise agreements as opposed to employment contracts, may present a lesser challenge for compliance. However, the Court finds that the fee splitting can be unconscionable where fees and costs are so prohibitively expensive as to deter arbitration. *See Green Tree*, 531 U.S. at 90-91. Courts must inquire, on a case-by-case basis, whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation. *See Gadson*, 2011 WL 1231311, at *6. The analysis must include the specific claimant's ability to pay the arbitration costs and expected cost differential between arbitration and litigation in court and whether that cost differential is so substantial as to deter the bringing of claims. *See id.*

Defendants contend that Plaintiffs have failed to make an individual, case-by-case presentation of evidence as to the cost of arbitration relative to the cost of litigation or each individual plaintiff's ability to pay. However, it appears from the record that Plaintiffs' cost projections, especially considering that the arbitrations must proceed as individualized proceedings, supports a strong likelihood that the individual plaintiffs will not be able to afford arbitration. Accordingly, the Court severs the fee-splitting provisions of the arbitration agreements as unenforceable. *See id.*

### b. Limitations on statutory remedies.

Plaintiffs contend that the UFAs provide a shorter statute of limitations, place a cap on damages, and bar injunctive relief. Because Plaintiffs do not seek injunctive relief in this matter, that provision is irrelevant. *See Dauod v. Ameriprise Fin. Serv.*, 2011 WL 6961586, at *5 (C.D. Cal. Oct. 12, 2011) (holding that unconscionability challenge to irrelevant provision of arbitration agreement does not create a genuine issue for review).

With respect to the provisions regarding the statute of limitations and possible cap on damages, the Court finds that those provisions are not specifically part of the arbitration clauses and their applicability or severability must be determined in the process of arbitration.

**E.     Status of Non-Signatories.**

Lastly, Plaintiffs contend that the secondary drivers, who were not signatories to the arbitration agreements, did not voluntarily submit to arbitration and may not be compelled to arbitration.

The question of whether nonsignatory to an arbitration clause can be bound by the agreement is analyzed under ordinary contract and agency principles. *See Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986). Among these principles, are "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citing *Thompson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). Equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Id.* (citing *Washington Mutual Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)). In the arbitration context, nonsignatories can be held to arbitration clauses where the nonsignatory "knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *Id.* (citations omitted).

Here, it is clear both from Plaintiffs' claims and the specific language of the UFAs that the nonsignatories knowingly exploited the rights and privileges granted under the agreements. The claims made by the nonsignatory secondary drivers require that they participated actively and for compensation in the rights and duties described in the UFAs. The FLSA and Labor Code claims require that the secondary drivers specifically performed under the contract. In addition, the language of the UFAs clearly contemplated and permitted that the franchisees could hire secondary drivers. As intended third party beneficiaries of the contracts who knowingly exploited the agreements, the secondary drivers have the right to enforce the agreements as well as the benefits of being bound by the arbitration provision the agreements contain.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to compel individual arbitration and to stay proceedings as to those individuals pending the result of arbitration. With respect to those plaintiffs whose claims are not subject to arbitration, the Court will address those matters at the further case management conference which is CONTINUED to October 26, 2012 at 1:30 p.m. The claims subject to arbitration shall proceed to individual arbitrations forthwith and, as to their claims, this matter is stayed.

In addition, because the Court finds Plaintiffs' motion to amend the complaint may be moot depending upon the course of the remainder of the litigation (*i.e.*, whether the remaining plaintiffs elect to stay this action or continue the litigation), the Court DENIES the current motion without prejudice. Should Plaintiffs wish to amend the complaint with regard to the remaining plaintiffs, the Court may address those claims at a later date.

**IT IS SO ORDERED.**

Dated: September 20, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE