Aaron Kaufmann, SBN 148580
Philip Monrad, SBN 151073
David Pogrel, SBN 203787
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile: (510) 272-0174
E-mail: akaufmann@leonardcarder.com
E-mail: pmonrad@leonardcarder.com
E-mail: dpogrel@leonardcarder.com

Daniel Feinberg, SBN 135983
Kirsten Scott, SBN 253464
LEWIS, FEINBERG, LEE, RENAKER
& JACKSON, P.C.
476 9th Street
Oakland, California 94607
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
E-mail: dfeinberg@lewisfeinberg.com
E-mail: kscott@lewisfeinberg.com

Peter Rukin, Esq., SBN 178336
Rosha Jones, Esq. SBN 279143
RUKIN HYLAND DORIA & TINDALL LLP
100 Pine Street, Suite 2150
San Francisco, CA 94111
Telephone: (415) 421-1800
Facsimile:  (415) 421-1700
E-mail: peterrukin@rhdtlaw.com
E-mail: rjones@rhdtlaw.com

Bryan Schwartz, SBN: 209903
Rachel Terp, SBN: 290666
BRYAN SCHWARTZ LAW
1330 Broadway, Suite 1630
Oakland, CA 94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301
Email: Bryan@BryanSchwartzLaw.com
Email: Rachel@BryanSchwartzLaw.com

Attorneys for PLAINTIFFS and the Proposed Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROOSEVELT KAIRY, LARRY BROWN, WAYNE DICKSON, DRAKE OSMUN, HARJINDER SINGHDIETZ, FREDERICK FERNANDEZ, YURIK ZADOV, and MUNIR AHMED on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUPERSHUTTLE INTERNATIONAL, INC. and SUPERSHUTTLE FRANCHISE CORPORATION, d.b.a. SUPERSHUTTLE, CLOUD 9 SHUTTLE, INC.; SUPERSHUTTLE OF SAN FRANCISCO, INC.; MINI-BUS SYSTEMS, INC.; SUPERSHUTTLE LOS ANGELES, INC.; AND SACRAMENTO TRANSPORTATION SERVICES, INC., and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.  3:08-CV-02993 JSW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER APPROVING AWARD OF CLASS REPRESENTATIVE SERVICE PAYMENTS, ATTORNEY'S FEES, AND COSTS.**<br><br>Date:    October 31, 2014<br>Time:   9:00 am<br>Ctrm:   5<br>Judge:  Hon. Jeffrey S. White |

# TABLE OF CONTENTS

I.    Introduction ................................................................................................ 1

II.   Summary of Financial Terms of Settlement.......................................... 1

III.  The Court Should Approve the Requested Service Awards, Attorneys' Fees,
and Costs ...................................................................................................... 3

  A.    The Requested Service Awards to Class Representatives Are Reasonable .................... 3

  B.    The Court Should Approve Class Counsel's Request for Fees and Costs ..................... 7

    1.    Legal Standard .......................................................................... 7

    2.    The Attorneys' Fees Request is Reasonable under the Lodestar Method ................... 8

    3.    The Percentage-of-the-Fund Method Confirms the Reasonableness of the Fee
Request......................................................................................... 10

  C.    The Requested Awards of Costs Is Reasonable ......................................... 14

IV.  Conclusion.................................................................................................. 14

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Bradburn Parent Teacher Store, Inc. v.  3M*,

4

   513 F. Supp. 2d 322 (E.D. Pa. 2007) ....................................................................... 6

5

*Bynum v. Dist. Of Columbia*,

6

   412 F. Supp. 2d 73 (D. D.C. 2006) .......................................................................... 6

7

*Cf. Ozga v. U.S. Remodelers, Inc.*,

8

   2010 WL 3186971 (N.D. Cal. Aug. 9, 2010) ........................................................ 11

9

*Cook v. Niedert,*

10

   142 F.3d 1004 (7th Cir.1998) ................................................................................. 6

11

*Covillo v. Specialtys Café*,

12

   C-11-00594 DMR, 2014 WL 954516 (N.D .Cal. Mar. 6, 2014) ............................ 14

13

*Cullen v. Whitman Med. Corp.*,

14

   197 F.R.D. 136 (E.D. Pa. 2000)............................................................................... 3

15

*Elliott v. Rolling Frito-Lay Sales, LP*,

16

   SACV 11-01730 DOC, 2014 WL 2761316 (C.D. Cal. June 12, 2014)................... 13

17

*Florida v. Dunne,*

18

   915 F.2d 542 (9th Cir.1990) ................................................................................... 8

19

*Garcia v. Gordon Trucking, Inc.*,

20

   No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012).................. 11, 13

21

*Garner v. State Farm Mut. Auto. Ins.*,

22

   No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010).......................... 6

23

*Gomez v. H & R Gunlund Ranches, Inc.*,

24

   CV F 10-1163 LJO MJS, 2011 WL 5884224  (E.D. Cal. Nov. 23, 2011) ............................... 13

25

*Graham v. Overland Solutions, Inc.*,

26

   No. 10–CV–0672, 2012 WL 4009547 (S.D. Cal. Sept. 12, 2012) ............................................ 6

27

*Hanlon v. Chrysler Group*,

28

   150 F. 3d 1011 (9th Cir. 1998) .................................................................................... 8

*Hensley v. Eckerhart,*

461 U.S. 424 (1983)........................................................................................... 8

*In re Bluetooth Headset Products Liab. Litig.,*

654 F.3d 935, 942 (9th Cir. 2011) ...................................................................... 8

*In re Crazy Eddie Sec. Litig.,*

824 F.Supp. 320 (E.D. N.Y. 1993) ................................................................... 13

*In re FPI/Agretech Securities Liti.,*

105 F.3d 469 (9th Cir. 1997) .............................................................................. 7

*In re Med. X-Ray Film Antitrust Litig.,*

1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998).................................. 14

*In re Mercury Interactive Corp. Sec. Litig.,*

618 F.3d 988 (9th Cir. 2010). ........................................................................... 14

*In re Washington Pub. Power Supply Sys. Sec. Litig.,*

19 F.3d 1291 (9th Cir. 1994) .......................................................................... 8, 9

*Ingram v. The Coca-Cola Co.,*

200 F.R.D. 685 (N.D. Ga. 2001)........................................................................ 7

*Laguna v. Coverall North America, Inc.,*

--- F.3d ----, 2014 WL 2465049 (9th Cir. June 3, 2014).............................. 8, 11

*Missouri v. Jenkins,*

491 U.S. 274 (1989)........................................................................................... 9

*Monterrubio v. Best Buy Stores, L.P.,*

291 F.R.D. 443 (E.D. Cal., 2013) ...................................................................... 7

*Powers v. Eichen,*

229 F.3d 1249 (9th Cir. 2000) ......................................................................... 11

*Rigo v. Kason Industries, Inc.,*

No. 11-CV-64-MMA DHB, 2013 WL 3761400 (S.D. Cal. July 16, 2013) ............. 13

*Rodriguez v. W. Publ'g Corp.,*

563 F.3d 948 (9th Cir. 2009). ............................................................................ 3

*Six Mexican Workers v. Ariz. Citrus Growers,*
   904 F.2d 1301 (9th Cir.1990)). ........................................................ 11

*Smith v. Tower Loan of Miss., Inc.,*
   216 F.R.D. 338 (S.D. Miss. 2003) ...................................................... 3

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) ......................................................... 3, 8

*Torrisi v. Tuscon Elec. Power Co.,*
   8 F.3d 1370 (9th Cir. 1993) ........................................................ 11, 12

*Van Vranken v. Atlantic Richfield Co.,*
   901 F. Supp. 294 (N.D. Cal. 1995) ................................................. 6, 14

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010)........................ 11, 12, 13

*Vizcaino v. Microsoft Corp.,*
   290 F.3d 1043 (9th Cir. 2002) ........................................................ 11

**Statutes**

California Labor Code Section 1194 ........................................................ 8

California Labor Code Section 2802 ........................................................ 8

Federal Rules of Civil Procedure 23(h) .................................................. 14

## I.      Introduction

On June 12, 2014, this Court granted Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.  *See* June 12, 2014 Order Granting Preliminary Approval of Class Action Settlement ("June 12 Order").  Pursuant to the terms of Settlement and this Court's June 12 Order, Plaintiffs Roosevelt Kairy, Harjinder Singhdietz (aka Harjinder Dubb), Drake Osmun, Wayne Dickson, Larry Brown, Munir Ahmed, Frederick Fernandez, and Yurik Zadov now move for an award of service payments, attorneys' fees, and litigation costs.

As discussed below, the requested service payments, attorneys' fees, and costs are fair and reasonable and should be approved.  The requested service payments—ranging between $4,000 and $18,000 per plaintiff—fall within the range of service awards in wage and hour cases regularly approved by district courts in this Circuit, and are particularly appropriate here given the significant risks and litigation burdens borne by the representative plaintiffs.  The requested attorneys' fee award of $4,000,000 is fair and reasonable under both the lodestar/multiplier and common fund methods approved by the Ninth Circuit, insofar as it is less than Class Counsel's lodestar and represents less than 25 percent of the total financial value of the settlement.  Finally, Class Counsel seek reimbursement for litigation expenses that they reasonably incurred in order to prosecute this case and obtain the result achieved.

## II.     Summary of Financial Terms of Settlement

The Settlement provides substantial benefit to Class Members, as detailed in Plaintiffs' preliminary approval motion.  It includes a cash component of $12,000,000, the net of which will be distributed immediately to approximately 3,230 Settlement Class Members based upon the approximate time worked during the Class Period.  It also provides for wide-ranging programmatic changes to the SuperShuttle Franchise program for the benefit of current and future franchisees ("Programmatic Changes").[1]

It is significant that many of the Programmatic Changes were negotiated by Class Counsel at the urging of operators themselves.  In preparation for negotiations, Class Counsel

---

[1] A copy of the Programmatic Changes was submitted as Exhibit 1 to the Declaration of Aaron Kaufmann in Support of Preliminary Approval, and a summary of its terms was attached as Exhibit 2 to the same.

conducted a series of meetings and interviews with current and former franchisees throughout California to determine the types of prospective programmatic relief they would like to see. Class member input resulted in an agenda of operational changes that Class Counsel then took into the mediation sessions and which ultimately formed the basis of many changes SuperShuttle has agreed to implement.  Declaration of Peter Rukin in Support of Motion to Approve Award of Service Payments, Attorneys' Fees, and Costs ("Rukin Fee Decl."), ¶ 10(t).

Certain of the Programmatic Changes that Class Counsel negotiated on behalf of the Class have ascertainable financial value for current and future van operators, including: (1) increased eligibility for suspension of Franchise Fees, valued at $7,500,000 over the course of 20 years; (2) the creation of a Franchise Resale Opportunity Program ("FROP") to create a market for the transfer of existing franchises at significantly increased value, with a potential value of $17,500,000; and (3) refinancing on existing Franchises from 12% to 9%, a benefit the parties value at between $300,000 and $750,000.

Other Programmatic Changes obtained by Plaintiffs and Class Counsel are more difficult to quantify financially but quite meaningful to van operators.  For example, the Settlement gives Franchisees a right to resell their franchises even after termination (something they currently do not possess); creates a new market for the sale of SuperShuttle vans; creates new five year franchises, so that operators with lower risk tolerance can undertake a reduced time commitment to the franchise; increases transparency regarding the number of SuperShuttle vans in operation, so that Franchisees have a better window into the value of their Franchises; clarifies how Franchisees may use SuperShuttle branded vans for their own commercial purposes when not in service to SuperShuttle; requires SuperShuttle to change the "dispatch screen" – which provides Franchisees with financial information about their assignments -  so that that can know in advance the true economic value of a trip they may accept (i.e., whether it will be subject to customer discounts or coupons); and requires SuperShuttle to establish a relationship with a national tax preparation firm to provide tax services to Franchisees at a discounted rate.

### III.  The Court Should Approve the Requested Service Awards, Attorneys' Fees, and Costs

#### A.  The Requested Service Awards to Class Representatives Are Reasonable

In the Ninth Circuit, "[i]ncentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000); *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 368 (S.D. Miss. 2003) (same). To assess whether an incentive payment is appropriate, courts balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

Here, Plaintiffs seek service awards in in varying amounts depending on the service each individual provided to the Class.  Specifically, Plaintiffs seek $18,000 service payments to Plaintiffs Kairy, Osmun, and Dickson, $16,000 to Plaintiffs Brown and Dubb, $5,000 to Plaintiffs Zadov and Fernandez, and $4,000 to Munir Ahmed.  The named Plaintiffs have tendered declarations to the Court variously describing the tasks they performed as representative plaintiffs, the risks they undertook in placing their names on the Complaint in the case, and the adverse financial and career consequences they suffered as a result of their participation.

These proposed payments are fair and reasonable and in recognition of the time and effort that each individual invested in assisting Class Counsel with the investigation, prosecution, and settlement of the case, as well as the risks they bore in serving as plaintiffs.  (Rukin Fee Decl., ¶ 12).  To begin with, all five of the original named plaintiffs devoted many dozens of hours assisting in the preparation and prosecution of this case, including searching for and producing documents, responding to interrogatories and requests for admission, sitting for deposition, and conferring with Class Counsel on an assortment of information gathering and strategy matters. (Declaration of Roosevelt Kairy, ¶¶ 9-16; Declaration of Drake Osmun, ¶¶ 8-15; Declaration of Harjinder Dubb, ¶¶ 9-15).  For example, Plaintiffs Dickson and Brown  began serving as named

plaintiffs at the very outset of the litigation.  Although neither worked as a SuperShuttle driver at that time, each played a crucial role in the prosecution of the case.  (Declaration of Larry Brown ¶¶ 7-13; Declaration of Wayne Dickson, ¶ 5). Plaintiff Dickson was the first driver to contact counsel about potential litigation in early 2007, and was still working as a SuperShuttle driver when he initiated contact with his attorneys to bring the case; he had only recently left SuperShuttle and was trying to start his own shuttle business when he filed suit in May 2008. (Declaration of Wayne Dickson, ¶¶ 5, 8-15).

While each of the original named plaintiffs similarly committed their time and resources to the prosecution of the case, several of them incurred very substantial additional burdens and risks.  For example, Plaintiffs Kairy, Osmun, and Dubb were among the first drivers to agree to serve as named plaintiffs.[2]  Each of these three Plaintiffs was working as a SuperShuttle driver at the time he agreed to have his named attached to the lawsuit, and assumed the risk of retaliation for such involvement.  (Declaration of Roosevelt Kairy, ¶ 5; Declaration of Drake Osmun, ¶ 5; Declaration of Harjinder Dubb, ¶ 5).

These Plaintiffs' risks were not theoretical: both Kairy and Osmun were terminated by SuperShuttle in the early stages of this case, and SuperShuttle also repossessed Osmun's van (his only form of transportation).  (Declaration of Roosevelt Kairy, ¶¶ 6-7; Declaration of Drake Osmun, ¶ 12). And Kairy had to endure SuperShuttle taking the deposition of his daughter. (Declaration of Roosevelt Kairy, ¶ 13).   Plaintiff Dickson's post-SuperShuttle efforts to start his own shuttle business were curtailed by SuperShuttle's actions when the company accused him of trademark and patent infringement and demanded that he incur substantial expense (and risk to his business) by re-branding both his new company and his only shuttle van.  (Declaration of Wayne Dickson, ¶ 6).

Further, all five were each deposed by SuperShuttle (four of the five for multiple days), and participated fully in the prosecution of the case, including searching for and producing documents, responding to interrogatories and requests for admission, and conferring with Class

---

[2]Kairy and Osmun were two of the four original Plaintiffs named in the initial Complaint filed in May 2008.  Dubb joined as a Plaintiff representing the Ontario area drivers upon filing of the First Amended Complaint in September 2008.

Counsel on an assortment of strategy issues.  (Rukin Final Approval Decl., ¶ 13, Declaration of Roosevelt Kairy, ¶¶ 10-12; Declaration of Drake Osmun, ¶¶ 10-11; Declaration of Wayne Dickson, ¶¶ 9-12).  Further, Dubb participated in person in two separate mediation sessions (one in 2008 and one in 2012), while Brown (the only original named Plaintiff from the Los Angeles area) participated in the earlier of the two sessions.  (Declaration of Larry Brown, ¶¶ 9-12; Declaration of Harjinder Dubb, ¶¶ 9-14).

All five original named Plaintiffs were also subject to counterclaims by SuperShuttle.  In February 2009, SuperShuttle sued Kairy, Dickson, Osmun, Brown, and Dubb for unjust enrichment, accounting, offset and restitution, and contractual and equitable indemnity. (Declaration of Roosevelt Kairy, ¶ 8; Declaration of Wayne Dickson, ¶ 7; Declaration of Drake Osmun, ¶ 7; Declaration of Larry Brown ¶ 6; Declaration of Harjinder Dubb, ¶ 8).  Plaintiff Dickson was also sued for trademark infringement/violation of the Lanham Act related to his competing shuttle business.  (Declaration of Wayne Dickson, ¶ 6).  These Plaintiffs were thus faced with significant potential financial hardship, both from having to defend these claims that SuperShuttle brought because they filed this case and also the risk of substantial damages with unknown, and potentially devastating, financial repercussions. (Declaration of Roosevelt Kairy, ¶ 8; Declaration of Wayne Dickson, ¶ 7; Declaration of Drake Osmun, ¶ 7; Declaration of Larry Brown ¶ 6; Declaration of Harjinder Dubb, ¶ 8).

Finally, Plaintiffs seek significantly smaller service awards of $5,000 each for Plaintiffs Zadov and Fernandez, and $4,000 for Munir Ahmed.  All three became involved in this litigation more recently.  However, their involvement has been substantial and important.  For example, as the only two named plaintiffs who worked exclusively as subdrivers rather than franchisee drivers, both Zadov and Fernandez have played a critical role in helping Class Counsel flesh out issues regarding subdrivers and have otherwise aided Class Counsel in the prosecution of the case.  (Declaration of Yurik Zadov, ¶ 3; Declaration of Frederick Fernandez, ¶ 2).  Plaintiff Fernandez also became involved in this case while driving a SuperShuttle van, thereby subjecting himself to the potential risk of retaliation.  (Declaration of Frederick Fernandez, ¶ 4). Plaintiff Ahmed assisted Class Counsel in providing notice to the California Labor and

Workforce Development Agency ("LWDA") regarding SuperShuttle's California Labor Code violations.  (Declaration of Munir Ahmed, ¶ 4).

The substantial risk of stigma and retaliation to which Plaintiffs submitted, as well as their willingness to bear the costs of an adverse judgment and their agreement to a general release of claims, is justification for the awards sought.  For example, in approving service awards of $25,000 to named plaintiffs in an employment class action, one district court recently explained:

> The proposed class representative enhancements of $25,000 each to Graham and Lampkin likewise do not appear to be the result of collusion. The Court evaluates incentive awards using "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." *Id.* at 977 (internal quotation marks and alterations omitted). Here, Plaintiffs request $25,000 each for Graham and Lampkin, for their time, effort, *risks undertaken for the payment of costs in the event this action had been unsuccessful, stigma upon future employment opportunities for having initiated an action against a former employer, and a general release of all claims related to their employment.*

*Graham v. Overland Solutions, Inc.*, No. 10–CV–0672, 2012 WL 4009547, at *8 (S.D. Cal. Sept. 12, 2012) (emphasis added).

The service awards that Plaintiffs seek are also consistent with the range of awards approved by other federal judges in class actions.  "Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where . . . the class representative has demonstrated a strong commitment to the class."  *Garner v. State Farm Mut. Auto. Ins.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) (collecting cases); *see also Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) (approving incentive payment of $25,000); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (approving an incentive award of $50,000 to named plaintiff); *Bradburn Parent Teacher Store, Inc. v.  3M*, 513 F. Supp. 2d 322, 347 (E.D. Pa. 2007) (incentive award of $75,000 to one named plaintiff); *Bynum v. Dist. Of Columbia*, 412 F. Supp. 2d 73, 80 (D. D.C. 2006) (incentive awards of $200,000 divided among six named plaintiffs); *Ingram v. The Coca-*

1   *Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving incentive awards of $300,000 to each

2   named Plaintiff in recognition of the services they provided to the class).

3           Finally, each requested service award is exceptionally modest in light of both the total

4   value of the settlement and the amounts Class Members will be receiving under the Settlement.

5   The aggregate amount of service awards ($100,000) is less than three tenths of one percent of the

6   total settlement value of $37,000,000, and each individual service award is less than one tenth of

7   one percent of the total cash fund of $12,000,000.  Moreover, this is not a case where

8   representative plaintiffs receive thousands of dollars in incentive awards while the class members

9   get scrip.  Here, each Class Member will be receiving an average of several thousand dollars in

10  settlement.  Under these circumstances, the requested modest service awards are reasonable.

11  *Compare Cook,* 142 F.3d at 1016 (approving, in the context of a recovery of $14 million, an

12  incentive payment of $25,000) with *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 463

13  (E.D. Cal., 2013) ($2,500 rather than $7,500 service award appropriate where each class member

14  will be receiving average of $65 under the settlement).

15          In sum, the requested payments to the Class Representatives are appropriate and justified

16  as part of the overall Settlement, in light of their services to, and risks taken on behalf of, the

17  Class.  The Court should therefore approve the requested service awards.

18          **B.      The Court Should Approve Class Counsel's Request for Fees and Costs**

19          Plaintiffs respectfully request an attorneys' fee award of $4,000,000 for Class Counsel's

20  work in this case.  Plaintiffs' fee request is appropriate because it is supported by Class

21  Counsel's lodestar and reflects a reasonable percentage of the common fund established for the

22  Class's benefit under a common fund cross check.

23          **1.      Legal Standard**

24          A district court has broad discretion in assessing the reasonableness of attorneys' fees.

25  *In re FPI/Agretech Securities Liti.*, 105 F.3d 469, 472 (9th Cir. 1997).  As the Ninth Circuit has

26  recognized, "in the settlement context fees are a subject of compromise, [and] 'since the proper

27  amount of fees is often open to dispute and the parties are compromising precisely to avoid

28  litigation, the [district] court need not inquire into the reasonableness of the fees at even the

high end with precisely the same level of scrutiny as when the fee amount is litigated.'"

*Laguna v. Coverall North America, Inc.*, --- F.3d ----, 2014 WL 2465049, at *2 (9th Cir. June 3, 2014), quoting *Staton*, 327 F.3d at 966.

In class action settlements, courts may calculate an appropriate award of fees using the "lodestar" method or the "common fund" method, applying either one as a cross check on the other. *Hanlon v. Chrysler Group*, 150 F. 3d 1011, 1029 (9th Cir. 1998); *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942, 944 (9th Cir. 2011)(courts have discretion to apply the "lodestar/multiplier" method to determine a reasonable attorneys' fee or as a crosscheck on the percentage fee calculation). "[T]he 'lodestar method' is appropriate in class actions brought under fee-shifting statutes ... where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation." *In re Bluetooth*, 654 F.3d at 941.  Regardless of whether a court applies the lodestar or the percentage method, the Ninth Circuit only requires that "fee awards in common fund cases be reasonable under the circumstances." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994)(citing *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir.1990))

Here, based on the facts of this case, the requested award of $4,000,000 is appropriate under both the lodestar method and the common fund method.

### 2. The Attorneys' Fees Request is Reasonable under the Lodestar Method

As noted above, the lodestar method provides courts an objective basis upon which to determine the value of the services provided by counsel where a fee shifting statute is implicated. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Here, the underlying class claims were brought pursuant to several fee shifting statutes, including California Labor Code Sections 1194 and 2802, and the benefits obtained for the Class under this Settlement includes substantial injunctive and prospective relief.  Accordingly, an award of fees under the lodestar method is appropriate.

Under the lodestar/multiplier method, the district court first calculates the 'lodestar' by multiplying the reasonable hours expended by a reasonable hourly rate.  "The court may then

1  enhance the lodestar with a 'multiplier,' if necessary, to arrive at a reasonable fee." *In re*

2  *Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1295 n.2 (citations omitted).

3      Class Counsel's billing summary[3] reflects that Class Counsel have spent 9,933.60 hours

4  prosecuting this case from its inception.  Notably, this summary is *under-inclusive*, insofar as it

5  excludes timekeepers at each firm who recorded less than 25 hours on this matter.  The hours

6  incurred and reflected were reasonably calculated to obtain this result for the class.  (Rukin Fee

7  Decl., ¶ 10).

8      The billing summary also reflects the hourly rates for each specified timekeeper.  These

9  hourly rates are reasonable and comparable to those of other class action attorneys with similar

10  experience and years of practice (and less than the rate of management-side attorneys with

11  comparable years of practice).[4]  (Rukin Fee Decl., ¶ 24; Declaration of Daniel Feinberg in

12  Support of Motion to Approve Award of Service Payments, Attorneys' Fees, and Costs, ¶ 11;

13  Declaration of Aaron Kaufmann in Support of Motion to Approve Award of Service Payments,

14  Attorneys' Fees, and Costs, ¶ 29; Declaration of Bryan Schwartz in Support of Motion to

15  Approve Award of Service Payments, Attorneys' Fees, and Costs, ¶ 6; Declaration of Michael

16  Rubin in Support of Motion to Approve Award of Service Payments, Attorneys' Fees, and Costs,

17  ¶¶ 5-7).  The rates submitted are also supported by attorneys in the practice area and market with

18  no connection to this litigation.  (Declaration of David Borgen in Support of Motion to Approve

19  Award of Service Payments, Attorneys' Fees, and Costs, ¶¶ 7, 9;  Declaration of Joshua Konecky

20  in Support of Motion to Approve Award of Service Payments, Attorneys' Fees, and Costs, ¶¶ 5-

21

22

23

24  [3] Rukin Fee Decl., Exhibit A.  If requested by the Court, Class Counsel are prepared to submit
    their time records for *in camera* inspection.

25

26  [4] The stated rates are current rather than historical, because "compensation received several years
    after the services were rendered—as it frequently is in complex civil rights litigation—is not
27  equivalent to the same dollar amount received reasonably promptly as the legal services are
    performed, as would normally be the case with private billings."  *Missouri v. Jenkins*, 491 U.S.
28  274, 283 (1989) (application of current rather than historic hourly rates to adjust for delay in
    payment is appropriate).

1  6, 8; Declaration of Daniel Hutchinson in Support of Motion to Approve Award of Service

2  Payments, Attorneys' Fees, and Costs, ¶ 20).[5]

3          Multiplying the specified hours (fewer than all hours expended on this matter) by the

4  reasonable hourly rates of counsel yield a lodestar calculation of $4,968,735.  (Rukin Fee Decl.,

5  Ex. A).  Under the lodestar method of fee recovery, Class Counsel are entitled to seek payment

6  of this amount, plus an appropriate multiplier.  Indeed, the risks undertaken by Class Counsel

7  and the novelty of several of the legal questions presented in the litigation and on appeal

8  (including PUC preemption and arbitrability) justify a multiplier on Class Counsel's lodestar.  *In

9  re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011)(the court

10 may adjust the lodestar figure to reflect a host of "reasonableness" factors, "including the quality

11 of representation, the benefit obtained for the class, the complexity and novelty of the issues

12 presented, and the risk of nonpayment").

13         However, rather than requesting a multiplier on their lodestar, Class Counsel seek a

14 *negative* multiplier, or "divider," of .80, so that they will recover only 80% of the lodestar they

15 expended on this case.  Given the substantial work performed by Class Counsel over six years of

16 litigation—hours spent on conditional certification under the FLSA, dispositive motion practice,

17 extensive discovery, and two Ninth Circuit appeals—the requested fee award of only 80%  of

18 counsel's lodestar is objectively reasonable under the lodestar method of calculation.  (Rukin Fee

19 Decl., ¶ 10 (a-u) (exhaustively detailing the work performed by counsel in this litigation)).

20

21              **3.   The Percentage-of-the-Fund Method Confirms the Reasonableness of
                       the Fee Request**

22         Class Counsel's fee request of $4,000,000 is also supported by a percentage-of-the-

23 fund analysis.  Under the percentage-of-the-fund method, the court compares the fee recovery

24 against the total settlement value.  The typical range of acceptable attorneys' fees in the Ninth

25 Circuit under this method is 20% to 33 1/3% of the total settlement value, with 25% considered

26 the benchmark.  *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL

27

28 [5] *See* Rukin Fee Decl., Exh. B (August 2010 Westlaw CourtExpress report reflecting hourly
   billing rates in excess of those sought by Class Counsel here).

1   5364575, at *8 (E.D. Cal. Oct. 31, 2012) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th

2   Cir. 2000)).

3          In valuing a settlement for purposes of calculating a percentage-of-the-fund fee award,

4   the court is not limited to the immediate cash payments but may take into account the full

5   range of benefits provided the class.  *See Laguna*, 2014 WL 2465049, at *3 (district court

6   "acted within its proper discretion when it found that the settlement contains significant

7   benefits for Plaintiffs beyond the cash recovery, and thus that the award, at about a third of the

8   lodestar amount, was reasonable.").   Further, the "benchmark percentage [of 25%] should be

9   adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the

10  percentage recovery would be either too small or too large in light of the hours devoted to the

11  case or other relevant factors." *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir.

12  1993) (quoting *Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th

13  Cir.1990)).   Thus, where a 25 percent fee award would not fully compensate Class Counsel for

14  the actual time they spent on the case, an upward adjustment is appropriate.  *Cf. Ozga v. U.S.*

15  *Remodelers, Inc*., 2010 WL 3186971, at *3 (N.D. Cal. Aug. 9, 2010) (White, J.)(citing *Vasquez*

16  *v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting award of 33 1/3%

17  of the common fund may be appropriate where it amounts to "significantly less than Class

18  Counsel's asserted lodestar")).

19         In addition to compensating Class Counsel for the hours they devoted to the case, other

20  factors may warrant an upward adjustment from the benchmark.  Those factors include (1) the

21  results obtained for the class; (2) the risk undertaken by counsel; (3) the skill required and the

22  quality of work; (4) the terms and length of the professional relationship with the client; and

23  (5) the financial burden of representation borne by Class Counsel.  *Vizcaino v. Microsoft*

24  *Corp*., 290 F.3d 1043, 1048-50 (9th Cir. 2002).

25         In this case, the requested fee award is fully supported by a percentage-of-the-fund

26  cross-check.  To begin with, because the full value of the settlement is well above $16,000,000,

27  the requested fee award of $4,000,000 is justified without any upward adjustment from the

28  25% benchmark.

However, even were the Court to ignore the total financial value of the settlement (including the very substantial financial benefit attributable to the programmatic and injunctive relief) and cross check the fee award only against the immediate cash payments to Class members, the award—at 33 1/3% of the Settlement's immediate cash value—would still fall within the range of acceptable attorneys' fees in the Ninth Circuit after an appropriate upward adjustment from the benchmark. *See Vasquez*, 266 F.R.D. at 491. Indeed, as discussed below, all the relevant factors would justify such an upward adjustment.

First, as noted above, a fee award of one third of the cash fund is reasonable given the hours Class Counsel have devoted to the case, and the fact that they will be recovering far less than their lodestar. *See Torrisi*, 8 F.3d at 1376.

Second, the Settlement represents a fair and reasonable result for the Class in light of the risks of litigation. The Settlement—which will distribute a net settlement fund of nearly $8,000,000 to approximately 3,230 current and former van operators—obtained substantial, immediate, and prospective value for the Class in the face of many significant risks. The settlement was reached in the aftermath of this Court's order to break apart the class and send most opt-in plaintiffs to individual arbitrations. Although Plaintiffs had appealed that ruling, the appeal might not have been successful. Moreover, even if the appeal were successful, the Class faced additional risks, including the denial of class certification, outright loss, and lengthy delay inherent in continued litigation. (Rukin Fee Decl., ¶ 11);

Third, Class Counsel undertook enormous risk and potential financial burden in bringing this case. Class Counsel accepted and litigated this class action for six years and through two appeals solely on a contingency fee basis without any assurance that they would be reimbursed for these costs or paid for the nearly 10,000 hours they have spent on the litigation. (Rukin Fee Decl., ¶ 26). While independent contractor misclassification cases are generally risky and difficult, the risks here were compounded by the fact that Defendants, as PUC and airport-regulated entities, had unique defenses to the employment claims asserted by Plaintiffs in this case. Indeed, Plaintiffs were on the verge of losing all of their state law claims

based on PUC jurisdictional grounds before the Ninth Circuit reversed this Court's December 22, 2009 dismissal order.

Fourth, the skill and quality of work performed by Class Counsel support the fee request. The attorneys prosecuting this case, before this Court and on appeal, are all skilled employment lawyers with substantial experience litigating complex class actions.  (Rukin Fee Decl., ¶¶ 3-5; Kaufmann Fee Decl., ¶¶ 3-20; Feinberg Fee Decl., ¶¶ 3-11; Schwartz Fee Decl., ¶¶ 8-16; Rubin Fee Decl., ¶¶ 2-7; Borgen Fee Decl., ¶ 6;  Konecky Fee Decl., ¶ 5; Hutchinson Fee Decl., ¶ 20). Further, this case involved difficult issues revolving around PUC jurisdiction, franchise law, and arbitration matters.  Class counsel prosecuted two appeals, obtaining 1292(b) certification from this Court on both.  Class Counsel's skill in litigating and settling this complex and risky case supports the fee request.

Fifth, the fee request here is in line with the fees courts have awarded in similar cases. *See, e.g., Garcia*, 2012 WL 5364575, at *8-9  (approving fee award equal to one third of wage and hour settlement, resulting in 1.28 multiplier on lodestar); *Rigo v. Kason Industries, Inc.*, No. 11-CV-64-MMA DHB, 2013 WL 3761400, at *7 (S.D. Cal. July 16, 2013) (approving 30 percent fee award; noting that "in a study of 287 settlements ranging from less than $1 million to $450 million, "[t]he average attorney's fees percentage is shown as 31.71%, and the median turns out to be one-third.").  Indeed, courts have found far less favorable recoveries to warrant similar common fund awards.  *See, e.g., Elliott v. Rolling Frito-Lay Sales, LP*, SACV 11-01730 DOC, 2014 WL 2761316, at *10 (C.D. Cal. June 12, 2014) (approving 30 percent fee award on $1,600,000 wage and hour class settlement involving 3,500 class members, after less than three years of litigation); *Gomez v. H & R Gunlund Ranches, Inc.*,CV F 10-1163 LJO MJS, 2011 WL 5884224 at *6 (E.D. Cal. Nov. 23, 2011) (awarding fees of $425,000 on $915,000 total settlement); *Vasquez*, 266 F.R.D. at 491 (award of fees equal to 33 1/3% of the common fund when net settlement fund of $200,000 to be divided up among 177 class members); *In re Crazy Eddie Sec. Litig.,* 824 F.Supp. 320, 327 (E.D. N.Y. 1993) (awarding 33.8% in fees in a case where counsel recovered 10% of class damages); *In re Med. X-Ray*

1   *Film Antitrust Litig.,* 1998 U.S. Dist. LEXIS 14888, at *20 (E.D.N.Y. Aug. 7, 1998) (awarding

2   33.3% fee in antitrust action where counsel recovered 17% of damages).

3          Finally, Class Members were afforded the opportunity to review Class Counsel's fee and

4   cost request and object if they choose before this Court grants final approval of the Settlement.

5   *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994-95 (9th Cir. 2010).   Should

6   no Class Member object to the request for fees that would further support the requested award.

7          Class Counsel expended substantial resources and accepted enormous risk over six years

8   and two Ninth Circuit appeals before securing this settlement.  The $4,000,000 fee award Class

9   Counsel now seek is substantially less than the lodestar they expended to obtain these substantial

10  benefits for the Class, and falls well within the typical range of acceptable attorneys' fees in the

11  Ninth Circuit under a percentage-of-the-fund analysis.  Accordingly, the Court should approve

12  Class Counsel's fee request.

13         **C.      The Requested Awards of Costs Is Reasonable**

14         Class Counsel have also incurred $250,222.88 in costs in the prosecution of this case.[6]

15  These costs were reasonable and necessary to the successful prosecution of this case, and should

16  be reimbursed.  (Rukin Fee Decl., ¶ 27); Fed.R.Civ.P. 23(h); *see also Covillo v. Specialtys Café*,

17  C-11-00594 DMR, 2014 WL 954516, at *7 (N.D .Cal. Mar. 6, 2014) ("Class counsel is also

18  entitled to reimbursement of reasonable expenses.")(citing *Van Vranken*, 901 F.Supp. at 299

19  (approving reasonable costs in class action settlement)).  Accordingly, Class Counsel requests an

20  award of costs in the amount of $250,222.88.

21  **IV.    Conclusion**

22         For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) award service

23  payments to the representative plaintiffs in the total amount of $100,000 and pursuant to the

24  requested allocation; (2) approve an award of attorneys' fees to Class Counsel in the amount of

25  $4,000,000; and (3) approve an award of costs to Class Counsel in the amount of $250,222.88.

26

27

28  [6] See Rukin Fee Decl., Exhibit C for a summary of costs by category.  At the Court's request,
counsel are prepared to submit full itemized cost detail for the Court's review.

1  DATED:  July 7, 2014                    RUKIN, HYLAND, DORIA & TINDALL, LLP

2

3                                   By:    /s/ Peter Rukin

4                                          PETER RUKIN
                                           Attorneys for PLAINTIFFS
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28